# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL C. HOPPER,       )
                                      )
          **Plaintiff,**     )
v.                              )      **Case No. CIV-09-263-SPS**
                                        )
MICHAEL J. ASTRUE,      )
**Commissioner of the Social**     )
**Security Administration,**      )
                                      )
         **Defendant.**     )

## OPINION AND ORDER

The claimant Michael C. Hopper requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the decision of the Commissioner's decision is REVERSED and the case REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. See 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 4, 1964, and was forty-eight years old at the time of the administrative hearing. He has a twelfth-grade education and has worked as a truck driver, shop foreman/laborer, pipefitter foreman, head stone polisher, farmer, and assembly worker (Tr. 136). The claimant alleges he has been unable to work since September 15, 2005 because of diabetic neuropathy in his feet and hands (Tr. 135).

## Procedural History

On May 16, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and found that the claimant was not disabled in an opinion dated June 5, 2009. The Appeals Council denied review, so the ALJ's opinion represents the final decision of the Commissioner for purposes of this appeal. 20 C.F.R. §§ 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a range of sedentary work, *i. e.*, he could lift and/or carry ten pounds occasionally and five pounds frequently; stand/walk two hours and sit six hours of an eight-hour workday, but was limited to only simple, routine, unskilled tasks which do not require interaction with the general public

(Tr. 15). The ALJ concluded that while the claimant could not return to any past work, he was nevertheless not disabled because there are jobs in the national economy that he can perform, *i. e.*, hand worker, assembler, and sorter (Tr. 23).

## Review

The claimant contends that the ALJ erred by improperly assessing claimant's credibility and, related to that contention, in his evaluation of the "other source" opinions of claimant's wife, sister, mother, mother-in-law, daughter, and friend. The undersigned finds claimant's contention persuasive.

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

In September 2008, six Adult Function Reports were submitted on claimant's behalf. Claimant's wife, F. Marlene Hopper stated that claimant's daily activities consisted of getting up to take medication, lying down to sleep, and eating (Tr. 202). She

wrote that she helps him bathe, dress, shave, and that he cannot prepare meals because "he can't feel his hands so he could burn himself and not feel it" (Tr. 204). Mrs. Hopper also wrote that claimant has "high days" where he spends "money on things that aren't needed" (Tr. 205), and "low days" where he "doesn't want to be around anyone." (Tr. 207). In addition, she stated that claimant suffers from paranoia, has difficulty remembering when to take his medicine and what medications to take, and has "trouble relating to the children because at times he thinks they are upset with him when [he is] having a down day" (Tr. 209).

Annita D. Ensey, claimant's sister, wrote that claimant lies down often and walks with a cane (Tr. 210), can no longer stand long enough to prepare a meal (Tr. 212), fish, work on cars, or do yard work (Tr. 211), and needs assistance in and out of the bath (Tr. 211). Further, Ms. Ensey wrote that claimant "gets real[l]y upset because he cannot do the things he used to do" and "shuts himself in his room a lot because he does not want [anybody] around" (Tr. 217).

Next, Rebecca L. Holtman, a friend of the claimant, completed a Function Report in which she stated that she had known claimant for seven years, and that claimant activities included, essentially, taking meds and lying down, he rarely goes outside (except when going to the doctor), and cannot stand for more than 15-30 minutes (Tr. 218). She wrote that "on good days [claimant] doesn't sleep, on his bad days all he does is sleep" (Tr. 219). Ms. Holtman indicated that claimant's impairments had impacted him in that "before he was outgoing, loved the outdoors [and now] he is unable to do any of these things" (Tr. 222).

Claimant's daughter, Rosalie Ashby, likewise submitted a Function Report, and she echoed many of the same sentiments as the previously mentioned Reports. For instance, Ms. Ashby indicated that claimant's wife helps him shave because his hands shake badly, that claimant is unable to drive himself places, and that he needs assistance with buttons zippers, and snaps, as well as getting into and out of the bathtub (Tr. 227). She stated that claimant frequently drops things due to reduced feeling in his hands and is very irritable (depending on whether he is having a good or bad day) (228).

Joyce Bryant, claimant's mother-in-law, stated that claimant is unable to do most things, his mood affects his sleep, and he cannot sit, stand, or lie down for any length of time (Tr. 230-31). She reported that claimant has "poor balance and falls," has difficulty remembering when to take medications, and uses a cane to ambulate (Tr. 231-32). Ms. Bryant wrote that claimant becomes confused easily, is very paranoid, and does not handle stress well (Tr. 236).

Finally, claimant's mother Virginia Hopper noted that claimant does not sleep at all some nights, and that he sometimes needs help getting up from the toilet (Tr. 239). Mrs. Hopper also noted that claimant has difficulty remembering what medications he is supposed to take or when he is supposed to take them, and that claimant "doesn't care if he cleans up or not" when having a "low" day (Tr. 240). She wrote that claimant "can't think clearly now" when describing how claimant's ability to handle money has been impaired (Tr. 242), and that she has noticed that claimant cannot hold a conversation and is paranoid (Tr. 244). Finally, Mrs. Hopper described that claimant used to be "very

outgoing" and "ready to help anyone," but that has changed in correlation with his difficulties sleeping and walking (Tr. 245).

The claimant testified at the administrative hearing that he can no longer feel the brake and gas pedals in a truck with his feet and that he no longer drives because of this (Tr. 36). He stated that his "biggest problem is being able to stand and walk," and that these issues prevented him from working (Tr. 36). He stated that he has no feeling in his legs from his knee down and that his right foot is more affected than his left (Tr. 37). He also testified that he has "problems gripping and [his] fingertips are numb," and that he has at times burnt his fingers without realizing that they were burning (Tr. 48). The claimant described mental symptoms which included hearing voices telling him "how bad a person [he is] because [he] can't work, [he] can't do nothing and don't belong" (Tr. 39), depression (Tr. 41), and mood swings (Tr. 46).

First, some of the ALJ's reasons for rejecting claimant's allegations relating to pain and numbness in his hands and feet are not supported by the record. For instance, the ALJ stated in his opinion that state examining physician Dr. Joseph Tran observed and recorded that the claimant "'jumped really hard with tears in his eyes'" when Dr. Tran "palpated claimant's plantar feet," which the ALJ found to be inconsistent with the claimant's allegations. However, Dr. Tran actually made several notations related to this examination that claimant *did* suffer from pain and numbness in his feet due to diabetic neuropathy. For instance, Dr. Tran noted that "[t]he patient is in acute distress because of pain in his feet and heels" in his description of claimant's general exam (Tr. 312). Dr. Tran also noted that claimant "has difficulty being able to rise from the seated position,

get on and off the examination table, lie down and rise back up because of the feet and heel pain" and noted that "[n]o inconsistencies were noted during the exam" (Tr. 312). Dr. Tran similarly noted that "[s]ensation to pin prick is extremely poor on both feet up to almost to his knee on the later aspect and up to his ankle in the middle aspect," that the claimant "was not able to walk on heels and on toes very strongly because of the pain," and that claimant's "[g]ait is [slow] because of feet pain and distress" (Tr. 313). Contrary to the ALJ's assertion, all of Dr. Tran's statements regarding claimant's pain and numbness in his feet *support* the claimant's allegations. Thus, the ALJ's credibility determination is not supported by substantial evidence. *Bakalarski v. Apfel*, 1997 WL 748653, at *3 (10th Cir. Dec. 3, 1997) ("Although the ALJ's remaining reasons find support in the record, this case must be reversed for a reevaluation of [claimant's] subjective complaints. Because a credibility assessment requires consideration of all the factors 'in combination,' *Huston*, 838 F.2d at 1132 n.7, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.") [unpublished opinion].

The claimant also argues that the ALJ improperly evaluated the "other source" opinions submitted by claimant's mother, mother-in-law, wife, friend, sister, and daughter. The ALJ's analysis of these opinions consisted entirely of the following language:

> Although their statements may be sincere, lay witnesses cannot determine whether observed behaviors are medically compelled, or whether they are merely a lifestyle choice on the part of the claimant. Lay witness testimony

is, for the most part, dependent upon the subjective complaints of a claimant, which herein are not credible. I have carefully considered the statements of claimant's family members and friend, but I find that their statements of significant limitation are outweighed by other factors in making a credibility determination in this matter. Further, claimant's family members (especially his wife) have a vested interest in claimant receiving disability payments, and that does not lend credibility to their statements.

Social Security Ruling 06-3p (SSR 06-3p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-3p, 2006 WL 2329939. SSR 06-3p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. While the ALJ mentioned the statements of the third party witnesses in his opinion, he failed to properly evaluate them in accordance with the factors set out in SSR 06-3p. In addition, because the ALJ improperly analyzed the claimant's credibility as discussed *supra*, the ALJ's statement that he was rejecting the third party statements, in part, because such testimony is based on subjective complaints of the claimant which he had already found not credible is not supported by substantial evidence, even if it *were* a sufficient basis for rejecting the lay witness testimony at issue.

In the instant case, the ALJ rejected the claimant's lay witness statements in part on the basis that such witnesses are unable to determine whether a claimant's complaints

are medically compelled or a lifestyle choice on the part of the claimant, *even if the opinion is sincere*. The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. While the ALJ did *mention* the lay witness statements and gave reasons for discrediting the lay witness statements in this case, the first problem with his reasoning is that it essentially consists of generalized statements that apply to *every* lay witness opinion. *See Spicer v. Astrue*, 2010 WL 4176313, *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). *See, c.f.*, *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) ("The ALJ found [claimant's wife] credible in her observations of her husband's activities, and the ALJ should not have discredited her testimony on the basis of its relevance or irrelevance to medical conclusions."), *citing* 20 C.F.R. § 404.1513(d). .

Second, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective

complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement such as the one that he used here. The ALJ is perfectly capable of separating the evidence that is based on the personal observations of the lay witness and, on the other hand, the evidence presented by the lay witness that is based on claimant's subjective complaints. Perhaps more importantly, the undersigned has determined that the ALJ's reasons for finding the claimant not credible are not supported by substantial evidence, so even if the ALJ's statement *was* legally sufficient for rejecting the third party statements, it would no longer be supported by substantial evidence.

Because the ALJ failed to properly analyze the third party witness statements in assessing claimant's credibility, the decision of the ALJ must be reversed and remanded. On remand, the ALJ should properly evaluate the third party witness statements in accordance with the factors set out in SSR 06-3p, and then re-assess claimant's credibility. If the ALJ's subsequent credibility analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that incorrect legal standards were applied, and that the decision of the Commissioner is not supported by substantial evidence. The Commissioner's decision is therefore hereby REVERSED and REMANDED.

DATED this 31st day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma